IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOCAL 1745,
UNITED TRANSPORTATION UNION, et al.,

   Plaintiffs,

vs.               No. CIV 00-380 JC/RLP (ACE)

CITY OF ALBUQUERQUE, et al.,

and

UNITED TRANSPORTATION
UNION INTERNATIONAL, et al.

   Defendants.

**MEMORANDUM OPINION AND ORDER**

   THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment, filed November 1, 2000 *(Doc. 27)* and Defendants' Motion to Strike, filed January 11, 2001 *(Doc. 35)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. Defendants' Motion for Summary Judgment is well taken and will be granted. Defendants' Motion to Strike is not well taken and will be denied.

**I.**   **Background**

   When Congress implemented the Urban Mass Transit Act, it required governmental entities taking over private transit companies to make arrangements to preserve transit workers' existing collective bargaining rights. Consequently, governmental entities usually entered into "Section 13(c) Agreements" with workers. Plaintiff United Transportation Union Local 1745 ("Local 1745") and the City of Albuquerque ("City Defendants") entered a Section 13(c)

Agreement in 1978, thereby allowing both parties to enter into subsequent collective bargaining agreements. Local 1745 and City Defendants have agreed on several collective bargaining agreements over the years.

In June of 1997, the collective bargaining agreement between Local 1745 and City Defendants expired. The parties periodically negotiated for a new agreement and failed to reach any resolution. Local 1745 maintained that since the parties were unable to reach a new agreement, the Section 13(c) Agreement required binding "interest arbitration." *See* Memo. in Support of Pls.' Mot. for an Order Compelling Interest Arbitration at 4, filed August 31, 2000 *(Doc. 17)*. "Interest arbitration" is the arbitration of new contract terms, usually resorted to when interested parties are unable to agree on the terms of a new collective bargaining agreement. *See id.*

Meanwhile, City Defendants disagreed with Local 1745's interpretation and argued that the Section 13(c) Agreement only provided for "rights arbitration." *See* City Defs.' Response to Pls.' Mot. for an Order Compelling Interest Arbitration at 6, filed September 15, 2000 *(Doc. 20)*. "Rights arbitration" occurs in the context of an existing agreement and involves disputes over the meaning and proper application of particular contractual rights that have vested in the past. *See id.*

During the contract dispute with City Defendants, Local 1745 also discovered that it disagreed with officers from its parent organization, Defendant United Transportation Union International (collectively, "UTU International"), over the interpretation of its Section 13(c) Agreement. The disagreement surfaced when UTU International failed to object to a grant application for federal assistance submitted by City Defendants to the U.S. Department of Labor

("DOL").

City Defendants submitted a grant application for money to the Federal Transit Administration. *See* Exhibit 2, attached to Memo. Brief in Support of UTU Defs.' Mot. for Summary Judgment, filed November 1, 2000 *(Doc. 28)*. As a part of this process, the DOL must conclude that fair and equitable labor protections are in place before federal assistance can be disbursed to a grant applicant. The DOL referred City Defendants' grant application to UTU International, and UTU International was given the opportunity to object to the grant application if fair and equitable labor protections were not in place. *See id.* UTU International Defendants did not object to the grant application. *See id.*

When Local 1745 discovered UTU International's approval of the grant application, it hired an independent attorney, separate from the legal representation provided by UTU International. *See* Exhibit A, First Amended Complaint ("Pls.' Compl.") at 5, ¶ 15, attached to Notice of Removal, filed March 15, 2000 *(Doc. 1)*. On June 10, 1999, counsel for Local 1745 wrote the U.S. Department of Labor ("DOL") and objected to City Defendants' grant application and the proposed certification of employee protective arrangements pursuant to its Section 13(c) Agreement. *See id.* In addition, counsel for Local 1745 informed the DOL that he was the sole legal representative of Local 1745. *See id.* In response, UTU International informed Local 1745 that it was not permitted to retain independent counsel. *See id.* at 7, ¶ 20 and ¶ 23.

Local 1745 then brought suit against both City Defendants and UTU International. Local 1745 claimed that both Defendants breached the Section 13(c) Agreement, breached the duty of good faith and fair dealing, violated the LMRDA Bill of Rights (29 U.S.C. § 411), caused a tortious interference with contract, and engaged in prohibited and unfair labor practices.

While this suit remained pending, Local 1745 and City Defendants entered into a new collective bargaining agreement that was signed on March 9, 2001.  As a result of these new developments, Local 1745 has conceded its claims against City Defendants.  *See* Joint Status Letter, submitted March 16, 2001.  However, Local 1745 still asserts its original claims against UTU International.

**III.   Discussion**

UTU International moves to dismiss Plaintiff's claims on a number of grounds.  However, at this time, the Court only needs to address UTU International's claim that Local 1745 failed to exhaust internal union remedies.  *See* Memo. in Support of Mot. for Summary Judgment at 8.

Union members have an affirmative duty to educate themselves about the available internal procedures.  *See Miller v. General Motors Corp.*, 675  F.2d 146, 150 (7th Cir.1982).  Article 28 of the United Transportation Union Constitution provides that any officer, member, or subordinate body shall exhaust all internal remedies before proceeding to court.  *See* Ex. 1 at 19, attached to Memo. in Support of Mot. for Summary Judgment.  Furthermore, Article 25 allows members to bring charges against International officers for failure to perform their duties and fulfill their responsibilities.  *See id.* at 16.  As UTU International points out, Local 1745 has completely ignored these internal union remedies.

Instead, Local 1745 argues that the right to sue by union members is so fundamental that it should be allowed to proceed, regardless of any exhaustion requirement.  *See* Plaintiff's Response to UTU Defendants' Motion for Summary Judgment at 3-11, filed December 29, 2000 *(Doc. 34)*.  However, the Court disagrees.

In *Imel v. Zohn Mfg. Co.*, 481 F.2d 181 (10th Cir. 1973), cert. denied, 415 U.S. 915

4

(1974), the Tenth Circuit held that failure to exhaust internal union remedies, as required by the union constitution, precludes a civil suit against the union for breach of the duty of fair representation when there is no allegation or proof that resorting to those procedures would be futile.  Local 1745 fails to allege that resorting to the procedures under UTU Constitution would be futile.

In addition, requiring Local 1745 to pursue internal union remedies is more desirable for several reasons.  First, this case exemplifies the policy underlying the exhaustion of remedies rule.  Labor organizations should have the opportunity to resolve disputes concerning internal affairs before dissident members bring the dispute before the court.  *See Imel v. Zohn Mfg. Co.*, 481 F.2d 181, 183 (10th Cir. 1973).  This requirement forces labor organizations to clarify their policies on particular disputes before a court intervenes.  For instance, if Local 1745 was to bring internal grievances against the International officers pursuant to Article 25 of the UTU Constitution, the Executive Board would have to clearly adopt the overall position of the entire union with respect to (1) when Locals may obtain independent counsel, and (2) UTU International's interpretation of the Section 13(c) Agreement.  The Executive Board should be given an opportunity to resolve these internal disputes before this Court intervenes.  Such internal grievance procedures are important devices for a labor organization because they force the organization to clarify its position on particular issues while maintaining the overall unity and integrity of the entire union.

Second, responsible union self-government deserves a fair opportunity to function.  *See NLRB v. Industrial Union of Marine and Shipbuilding Workers of America*, 391 U.S. 418, 429 (1968) (Harlan, J., concurring).  Plaintiffs have not given the internal process a chance to play itself out, nor have they explained their reasons for failing to engage the process.

Thus, the Court finds that Local 1745 has failed to exhaust internal union remedies.  The Court also finds that under the circumstances in this case, requiring Local 1745 to pursue internal union remedies against UTU International furthers important interests and outweighs any drawbacks.  Finally, in light of this ruling, the Court finds that Defendant's motion to strike is moot.

Wherefore,

**IT IS ORDERED** that  Defendants' Motion for Summary Judgment, filed November 1, 2000 *(Doc. 27)* is **granted**.

**IT IS  FURTHER ORDERED** that Defendants' Motion to Strike, filed January 11, 2001 *(Doc. 35)* is **denied.**.

DATED April 10, 2001.

_____
UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

    Paul Livingston, Esq.
    Albuquerque, New Mexico

Counsel for Defendants:

    Shane C. Youtz, Esq.
    Youngdahl & Sadin, P.C.
    Albuquerque, New Mexico